IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Larry D. Brown,                             )   No. CV-09-2625-PHX-GMS (LOA)
                                            )
              Petitioner,                   )   **REPORT AND RECOMMENDATION**
                                            )
vs.                                         )
                                            )
Charles L. Ryan, et al.                     )
                                            )
              Respondents.                  )
                                            )
_____)

       This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254.  (docket # 1)   Respondents have filed an Answer, docket # 8,

to which Petitioner has replied, docket # 11.  Accordingly, this matter is ready for review.

For the reasons set forth below, the Petition should be denied.

**I. Factual Background**

       On April 19, 2004, 85-year-old Earl P. visited the Walgreen's store at 3rd Street and

Bell Road in Phoenix, Arizona.  (Respondents' Exh. A, Tr. 9/9/04 at 16-18)  Earl left the

store at around 3:45 p.m. and walked to his car in the parking lot.  (*Id*.)   As Earl opened the

car door and started to get in the vehicle, he was grabbed from behind and pushed forward

into the car. Earl hit his head on the top of the door jamb and split his ear open.

(Respondents' Exh. A, Tr. 9/9/04 at 16-18)   Earl's assailant also hit him in the jaw.  (*Id*.)

The assailant then pulled Earl's wallet from his pocket.  (*Id*.)  Earl did not see his assailant's

face, and could only describe him as "quite a large man," who was black. (Respondents' Exh. A at 19, 24)

At that same time, Nathan Vance was in the Walgreen's parking lot opening the door to his truck which was parked "one car over and up" from Earl's car. (Respondents' Exh. A at 30) Vance saw Petitioner shoving Earl into the car door and trying to push him into the car. (Respondents' Exh. A at 30-31) Vance also saw a group of four or five black children, who appeared to be about 9 to 12 years old, standing approximately 15 feet away from Earl's car watching the incident in "amus[ment]." (Respondents' Exh. A at 31-32) Vance saw Petitioner grab an item that he assumed was Earl's wallet, then one of the children "ran up" and took the wallet. (Respondents' Exh. A at 31-32, 45-46) The group of children proceeded to the other side of the parking lot. (Respondents' Exh. A, Tr. 9/9/04 at 32)

After handing the wallet to the child, Petitioner started "limping and walked" towards Walgreen's stating "he ran over my foot." (Respondents' Exh. A at 32-33) Vance called police and reported the incident. Vance described the perpetrator as a black man, about 6 feet, 3 inches tall, wearing "some kind of [black] cap or hat", a black shirt with cut-off sleeves, black pants, and sunglasses. (Respondents' Exh. A at 35, 37-42) Vance then saw Petitioner walk out of Walgreen's and meet up with the group of children. (*Id.* at 33-34) Petitioner and the children "walked around the back of Walgreens," "closer to Bell Road." (*Id*. at 34) Vance saw the children run off and saw Petitioner walk quickly into a canal. (Respondents' Exh. A at 34) Just as the children and Petitioner "disappeared" from Vance's view, Phoenix Police Officer Matthew Makinster arrived in response to Vance's call. (Respondents' Exh. A at 34; Exh. B, Tr. 9/9/04, 1:17 p.m., at 41-42) Vance told Officer Makinster that he could identify the suspect. (Respondents' Exh. B, Tr. 9/9/04, 1:17 p.m., at 44)

Around 3:45 p.m. on April 19, 2004, Phoenix Police Officer Andrew Barciz, a plainclothes officer assigned to the neighborhood enforcement team who was driving an unmarked car, received a radio call regarding a robbery which included a description of Petitioner and the children, and their direction of travel. (Respondents' Exh. B at 6-7) As

Officer Barciz approached the Walgreen's store, he saw a "large group of black kids as well as a black female," walking westbound on Bell Road behind and just west of Walgreen's. (Respondents' Exh. B at 5-9)  Officer Barciz approached them, identified himself as a police officer by displaying his badge, and "[t]hey all kind of sat down." (*Id*. at 9)  As Officer Barciz was talking to the woman and children, he observed a black man, wearing a black shirt and "black beanie" or "beret type cap" walking along the bottom of the culvert slightly to the north and below them. (Respondents' Exh. B at 9-10, 22-23)

Officer Bernard Neil relieved Officer Barciz, who then searched for the man he had seen in the culvert.  Barciz found the man a few minutes later walking northbound on the sidewalk on Central, about 200 to 300 feet north of Bell Road. (Respondents' Exh. B at 10-11, 27-30)  The man had removed his black or "dark color" shirt and had it "draped over his shoulder." (Respondents' Exh. B at 10, 24-25)  The man was also wearing a black beret hat, and black pants. (Respondents' Exh. B at 10, 16, 24-25, 45-46)  Officer Barciz radioed that he had a potential suspect in sight. (Respondents' Exh. B at 10)  Officer Neil left the woman and children and responded to Barciz's call. (Respondents' Exh. B at 10-11, 29)  Officers Barciz and Neil stopped Petitioner, informed him why they had stopped him, and waited for Vance to be brought over to view Petitioner. (Respondents' Exh. B at 11, 29-30)

Officer Makinster drove Vance approximately 300 yards from the Walgreen's parking lot to where Petitioner had been stopped. (Respondents' Exh. B at 44)  As Officer Makinster approached the scene, Vance stated, "[t]here he is right there," identifying Petitioner. (Respondents' Exh. B at 45; Exh. A at 35-36)  Petitioner was "holding the shirt," and wearing the same hat which Vance had seen the suspect wearing in the Walgreen's parking lot. (Respondents' Exh. A at 42)

Petitioner was then arrested and searched. (Respondents' Exh. B, at 13, 58)  In Petitioner's right front pants pocket, police officers found two credit cards belonging to Earl P. that had been in his wallet. (Respondents' Exh. B at 13, 47, 58-59; Exh. A at 19)  Officer Neil located the woman and children at a nearby bus stop and drove them to Petitioner's location. (Respondents' Exh. B at 30-31)  The woman asked Petitioner for "bus passes."

(Respondents' Exh. B at 35-36, 52, 63)  Petitioner gave the sunglasses he had been wearing to the woman.  (Respondents' Exh. B at 52)  The children were searched and none of Earl P.'s property was found on the children.   (Respondents' Exh. B at 19-20)

While Officer Dawn Vaughn was transporting Petitioner to the police station, she asked him how the victim's credit cards got into his pocket.  (Respondents' Exh. B at 60) Petitioner replied, "I don't know."  Petitioner also told Officer Vaughn that he found the victim's credit cards "in the wash near the Walgreen's."  (Respondents' Exh. B at 64) While transporting Petitioner, Officer Vaughn received a radio broadcast regarding a "black male at Safeway" with "blood on his knuckles."  (Respondents' Exh. B at 60-61, 65)  The radio was "turned up."  (*Id.*)   After the radio broadcast, Petitioner stated, "you've got the wrong guy."  (Respondents' Exh. B at 12, 65, 72)

Officer Barciz responded to the report of a black male with bloody knuckles, allegedly seen at the Safeway store east of Walgreen's near 7th Street, but did not find anyone matching that description.  (Respondents' Exh. B at 12)

Earl P. was taken to the Veterans Administration Hospital emergency room, where he received eight to ten stitches in this ear and a brain scan.  (Respondents' Exh. A at 20)

## II.  Procedural Background

### A.  Charges, Trial and Sentencing

On April 28, 2004, the State of Arizona filed an indictment in Maricopa County Superior Court charging Petitioner with one count of aggravated robbery, a class 3 felony (Count 1), and two counts of theft of a credit card, or obtaining a credit card by fraudulent means, class 5 felonies (Counts 2 and 3).  (Respondents' Exh. E)   The State subsequently filed allegations of historical prior felony convictions and aggravating circumstances other than prior convictions.  (Respondents' Exhs. F, G)   The case proceeded to jury trial[1] in September 2004.

---

[1]  The Honorable Andrew G. Klein presided.

On September 10, 2004, the jury convicted Petitioner as charged. (Respondents' Exh. C, Tr. 9/10/04 at 3, 4)  Following a hearing regarding aggravating factors, the jury found three of the four aggravating circumstances alleged by the State on Count 1 and four of the five aggravating circumstances alleged on Counts 2 and 3. (Respondents' Exh. C at 5-29, 30-33)  Petitioner stipulated to having six prior felony convictions. (Respondents' Exh. D at 4-5)  On November 8, 2004, the trial court sentenced Petitioner to an aggravated term of 20 years' imprisonment on Count 1 and to aggravated terms of 6 years' imprisonment on Counts 2 and 3. (Respondents' Exh. D, Tr. 11/8/04 at 11-15)  The court ordered the sentences to run concurrently. (Respondents' Exh. D at 14)

**B. Direct Appeal**

Petitioner appealed his conviction to the Arizona Court of Appeals raising one issue: whether there was insufficient evidence to support his conviction for aggravated robbery under A.R.S. § 13-1903. (Respondents' Exh. H at 8-16)  Petitioner specifically argued that the State failed to present evidence of Petitioner's alleged accomplice's intent to facilitate the planning or commission of the aggravated robbery. On August 8, 2006, the Arizona Court of Appeals rejected Petitioner's claim and affirmed his convictions and sentences. (Respondents' Exh. I)  Petitioner sought review in the Arizona Supreme Court which was denied on January 16, 2007. (Respondents' Exhs. J, K)

**C. Post-Conviction Proceedings**

On February 13, 2007, Petitioner filed a notice of post-conviction relief pursuant to Ariz.R.Crim.P. 32. (Respondents' Exh. L)  On May 29, 2007, Petitioner's counsel filed a notice of completion of post-conviction review, notifying the court that she was unable to find any claims to raise in a Rule-32 petition. (Respondents' Exh. M)  The court granted Petitioner additional time to file a *pro per* petition. (Respondents' Exh. N)

On July 9, 2007, Petitioner filed a *pro per* petition raising the following claims: (1) Petitioner was denied due process and a fair trial because the indictment was "multiplicitous" because it charged robbery and two counts of theft of the victim's two credit cards in a single count; (2) prosecution for the three offenses violated the Double

Jeopardy Clauses of the U.S. and Arizona Constitutions; and (3) trial counsel was ineffective for failing to raise the multiplicity and double jeopardy claims.  (Respondents' Exh. O)

On November 19, 2007, the court denied relief and dismissed the petition. (Respondents' Exh. P)  The court found the multiplicity and double jeopardy claims precluded under Ariz.R.Crim.P. 32.2(a)(3) because those grounds could have been, but were not, raised on direct review.  (Respondents' Exh. P at 2)   Alternatively, the court found that both claims lacked merit.  (*Id.*)  The trial court rejected Petitioner's claims that trial counsel was ineffective for failing to raise the multiplicity and double jeopardy claims at trial because those claims "were not legally tenable" and, had counsel moved to dismiss any count for being multiplicitous or for exposing Petitioner to double jeopardy, "the Motion would have been denied."  (Respondents' Exh. P at 2)

Petitioner filed a petition for review in the Arizona Court of Appeals raising the same claims raised in his Rule-32 petition.  (Respondents' Exh. Q)   On November 12, 2008, the appellate court summarily denied review.  (Respondents' Exh. R)

**C. Federal Petition for Writ of Habeas Corpus**

On December 17, 2009, Petitioner filed the pending Petition for Writ of Habeas Corpus raising the following claims: (1) Petitioner's Fifth, Sixth, and Fourteenth Amendment rights to "Due Process and access to the court and equal protection during trial" were violated because there was insufficient evidence to support his conviction for aggravated robbery; (2) Petitioner's state and federal rights against "Double Jeopardy" were violated because Petitioner was tried for robbery and "the lesser-included offense of theft" of credit cards; and (3) Petitioner received ineffective assistance of counsel because trial counsel: (a) "failed to properly prepare and investigate the defense of multiplicity of lesser included offense"; (b) "refused to file a motion for *Dessarualt* (sic) hearing"; and (c) failed to "argue actual innocence upon the request of Petitioner, who always maintained his innocence."  (docket # 1 at 6-8)  Respondents assert that Petitioner's claims are either unexhausted and procedurally barred, or lack merit.  (docket # 8)   Petitioner disputes

Respondents' analysis of his claims. (docket # 11) The Court will address these arguments below.

## II. Exhaustion and Procedural Bar

Respondents argue that Petitioner failed to exhaust his state remedies on several of his claims because he did not fairly present those claims to the Arizona Court of Appeals. Respondents further argue that those claims are now procedurally defaulted, and thus must be dismissed.

### A. Relevant Legal Principles

Pursuant to 28 U.S.C. § 2254(b)(1), before a federal court may consider a state prisoner's application for a writ of habeas corpus, the prisoner must have exhausted available state-court remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). When seeking habeas corpus review, Petitioner bears the burden of showing that he has properly exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner must "fairly present" her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim."). In Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either on direct review or in a petition for post-conviction relief. *See Castillo v. McFadden,* 399 F.3d 993, 999 (9th Cir. 2004); *Crowell v. Knowles,* 483 F.Supp.2d 925 (D.Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

To result in exhaustion, claims must be fairly presented. That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his federal claim. *Picard v. Conor*, 404 U.S. 270, 276-77 (1971). A claim has been fairly presented if petitioner has described in state court both the operative

facts and the federal legal theory upon which he bases his claim in federal court. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (stating that "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."); *Galvan v. Alaska Department of Corrections*, 397 F.3d 1198, 1205 (9th Cir. 2005) (stating that "[t]o exhaust a federal constitutional claim in state court, a petitioner has to have, at least, explicitly alerted the court that she was making a federal constitutional claim."). General appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, do not establish fair presentation of a federal constitutional claim. *Castillo*, 399 F.3d at 1002 (observing that "[e]xhaustion requires more than drive-by citation, detached from any articulation of an underlying federal legal theory."); *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial"). Similarly, a mere reference to the "Constitution of the United States" does not preserve a federal claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be decided "on the same considerations" under state or federal law, the petitioner must make the federal nature of the claim "explicit either by citing federal law or the decision of the federal courts . . . ." *Lyons*, 232 F.3d at 668. A state prisoner does not fairly present a claim to the state court if the court must read beyond the petition or brief filed in that court to discover the federal claim. *Baldwin*, 541 U.S. at 27. In summary, a "petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum; (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

Where a prisoner fails to "fairly present" a claim to the state courts in a procedurally appropriate manner, state court remedies may, nonetheless, be "exhausted." This type of exhaustion is often referred to as "procedural default" or "procedural bar." *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S. at 731-32. There are two categories of procedural default. First, a state court may have applied a procedural bar when the prisoner attempted to raise the claim in state court. *Nunnemaker*, 501 U.S. at 802-05. Second, the state prisoner may not have presented the claim to the state courts, but pursuant to the state courts' procedural rules, a return to state court would be "futile." *Teague v. Lane*, 489 U.S. 288, 297-99 (1989).

In either case of procedural default, federal review of the claim is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Dretke v. Haley*, 541 U.S. 386, 393-94 (2004); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish cause, a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Id.* The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. *Id.* To establish prejudice, a prisoner must demonstrate that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982). Where petitioner fails to establish cause, the court need not reach the prejudice prong.

To establish a "fundamental miscarriage of justice" resulting in the conviction of one who is actually innocent, a state prisoner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); 28 U.S.C. § 2254(c)(2)(B).

**B. Application of Law to Petitioner's Claims**

**1. Ground One - Sufficiency of the Evidence**

In Ground One, Petitioner argues that his "Fifth, Sixth, and Fourteenth Amendment rights" to Due Process were violated because there was insufficient evidence to support his conviction for aggravated robbery. (docket # 1 at 6)  Respondents assert that this claim is procedurally defaulted because Petitioner did not present a federal challenge to the sufficiency of the evidence to the state courts.

To "fairly present" his federal claim to the state courts, Petitioner must have alerted the state courts that he was asserting a claim under the United States Constitution. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).  Mere similarity between a claim of state and federal error does not establish exhaustion.  *Id.* at 366.  Additionally, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion. *See Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

On direct appeal, Petitioner raised a state law claim challenging the sufficiency of the evidence to support the participation of an accomplice in the robbery for purposes of elevating the robbery to aggravated robbery pursuant to A.R.S. § 13-903.  (Respondents' Exh. H at 8-16)  Petitioner presented this claim of insufficiency of the evidence to the Arizona Court of Appeals solely on state law grounds.  Petitioner neither cited the Fourteenth Amendment nor any federal case law involving the legal standard for a federal Constitutional violation based on a claim of insufficiency of the evidence to support a state law conviction.  (Respondents' Exh. H)  Likewise, the appellate court rejected Petitioner's sufficiency of the evidence claim on the basis of state law.  (Respondents' Exh. I)

A federal due process claim challenging the sufficiency of the evidence is not fairly presented to the state courts if the habeas petitioner "'did not refer to the Due Process Clause of the United States Constitution'" and "'cited [neither] the Fourteenth Amendment nor any other constitutional violation predicated [thereon].'" *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), *amended*, 247 F.3d 904 (9th Cir. 2001) (quoting *Hiivala v. Wood*, 195 F.3d 1098, 1106-07 (9th Cir. 1999)).  As previously stated, Petitioner did not cite the Fourteenth Amendment Due Process Clause or any other federal law in support of his challenge to the

sufficiency of the evidence raised on direct appeal.  The Court finds that Petitioner's federal

sufficiency of the evidence claim asserted in Ground One is procedurally defaulted.

### B. Ground Two - Double Jeopardy

In Ground Two, Petitioner alleges that his state and federal double jeopardy rights

were violated because he was tried and convicted of aggravated robbery and the "lesser

included offense" of theft of the victim's credit cards.  (docket # 1 at 7)  Petitioner raised

these claims in his petition for post-conviction relief.  (Respondents' Exh. O at 5)

However, the trial court found those claims precluded under state law, Ariz.R.Crim.P.

32.2(a)(3),  because they could have been raised on direct appeal.  (Respondents' Exh. P at

2)  The trial court then stated "that existing case authority holds that the State did not violate

Defendant's double jeopardy rights when it prosecuted him for aggravated robbery and theft

in a single trial."  (Respondents' Exh. P at 2)  This alternative ruling did not vitiate the

independent state procedural bar.  *Nunnemaker*, 501 U.S. at 802-05.  The Arizona Court of

Appeals summarily affirmed the trial court's decision.

Petitioner's state and federal double jeopardy claims asserted in Ground Two are

procedurally defaulted by virtue of the state court's application of a procedural bar when

Petitioner attempted to raise those claims in state court.  *Nunnemaker*, 501 U.S. at 802-05.

### C.  Ground Three - Ineffective Assistance of Counsel

In Ground Three, Petitioner argues that counsel was ineffective for: (1) failing to

prepare and investigate the defense of multiplicty; (2) refusing to file a *Dessureault* motion

regarding the identification of Petitioner; and (3) refusing to argue "actual innocence."

(docket # 1 at 8)  Respondents concede that Petitioner properly presented his first claim of

ineffective assistance to the state courts, and that it is properly before the Court on habeas

corpus review.   Respondents argue that Petitioner's remaining claims of ineffective

assistance are procedurally defaulted and barred from federal review.

The Court agrees.  The record reflects that Petitioner did not present to the state

courts his claims that counsel was ineffective for failing to request a *Dessureault* hearing

and for failing to urge an "actual innocence" defense. Petitioner's presentation of one particular claim of ineffective assistance of counsel to the state courts does not exhaust other claims of ineffective assistance. *See Moorman v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005). Accordingly, Petitioner's second and third claims of ineffective assistance are procedurally defaulted.

### D. Procedural Bar

In summary, Petitioner's claims asserted in Grounds One and Two, and his claims that trial counsel was ineffective for failing to request a *Dessureault* hearing and for failing to argue "actual innocence" are procedurally defaulted and barred from federal habeas review. Petitioner is time-barred from raising the foregoing claims in a successive petition for post-conviction relief because the time for filing a notice of post-conviction relief has long expired. *See* Ariz.R.Crim.P. 32.1 and 32.4 (a petition for post-conviction relief must be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is later.") Likewise, Petitioner is time-barred from seeking appellate review of his defaulted claims because Arizona Rules of Criminal Procedure 32.9(c) and 31.19(a) require petitions for review from the denial of a petition for post-conviction relief, and petitions for review to be filed within 30 days after the final decision of the trial court or the court of appeals. Thus, Petitioner is time-barred from seeking further review in the state court.

Additionally, under Rule 32.2(a) of the Arizona Rules of Criminal Procedure, a defendant is precluded from raising claims that could have been raised on direct appeal or in any previous collateral proceeding. *See State v. Curtis,* 185 Ariz. 112, 113, 912 P.2d 1341, 1342 (Ariz. Ct. App. 1995) ("Defendants are precluded from seeking post-conviction relief on grounds that were adjudicated, or could have been raised and adjudicated, in a prior appeal or prior petition for post-conviction relief."); *State v. Berryman,* 178 Ariz. 617, 624, 875 P.2d 850, 857 (Ariz. Ct. App. 1994) (defendant's claim that his sentence had been improperly enhanced by prior conviction was precluded by defendant's failure to raise issue on appeal).

Because Petitioner's claims asserted in Grounds One and Two, and his second and third claims of ineffective assistance of counsel asserted in Ground Three are procedurally defaulted, federal habeas corpus review is only available if he can establish cause and prejudice or a fundamental miscarriage of justice.  To establish "cause", a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules.  *Murray,* 477 U.S. at 488-492.  The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel.  *Id.*    Prejudice is actual harm that results from the constitutional violation or error.  *Magby v. Wawrzaszek,* 741 F.2d 240, 244 (9th Cir. 1984).  Where petitioner fails to establish cause for his procedural default, the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations.  *Smith v. Murray,* 477 U.S. 527, 533 (1986).

Petitioner offers no argument sufficient to overcome the procedural bar.  He argues that appellate counsel was ineffective for failing to raise the double jeopardy and multiplicity claims on direct appeal.  (docket # 11)  "Ineffective assistance of counsel is cause for procedural default, but '[a]ttorney error short of ineffective assistance of counsel does not constitute cause.'" *Vansickel v. White*, 166 F.3d 953, 958 (9th Cir. 1999) (quoting *Murray v. Carrier*, 477 U.S. 478, 492 (1986)).  The Ninth Circuit has recognized that "'[t]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.'" *Poland v. Stewart*, 169 F.3d 573, 587 (9th Cir. 1999) (holding that appellate counsel's failure to raise several issues on appeal did not constitute cause for procedural default) (quoting *Murray v. Carrier*, 477 U.S. 478, 486 (1986)).

Moreover, even if counsel's failure to raise the double jeopardy and multiplicity challenges to the indictment on direct appeal amounted to cause, Petitioner cannot establish prejudice because there is no reasonable probability that but for appellate counsel's error, the result of the appeal would have been different.  As discussed in Section III below,

Petitioner's challenge to the indictment on multiplicity and double jeopardy grounds lacks merit. *See* Section III, *infra*. Accordingly, appellate counsel could not have been ineffective for failing to raise those claims on direct appeal. Thus, Petitioner's allegation of ineffective assistance of appellate counsel does not overcome the procedural bar.

Additionally, Petitioner's status as an inmate and lack of legal knowledge do not constitute cause for his failure to present his claims to the Arizona courts. *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986) (finding that an illiterate *pro se* petitioner's lack of legal assistance did not amount to cause to excuse a procedural default); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (finding that petitioner's arguments concerning his mental health and reliance upon jailhouse lawyers did not constitute cause.) Petitioner has not shown cause or prejudice to excuse the procedural default.

Petitioner has also failed to show that failure to consider his defaulted claims will result in a fundamental miscarriage of justice. A federal court will only review a procedurally defaulted habeas claim on the merits if petitioner demonstrates that failure to consider the merits of the claim will result in a "fundamental miscarriage of justice." A "fundamental miscarriage of justice" occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298 (1995). The fundamental miscarriage of justice exception applies to a "narrow class of cases" in which a petitioner makes an extraordinary showing that an innocent person was probably convicted because of a constitutional violation. *Schlup v. Delo,* 513 U.S. 298, 231 (1995). Petitioner has the burden of demonstrating that a "constitutional violation has resulted in the conviction of one who is actually innocent." *Id.* at 327. To establish the requisite probability, Petitioner must prove with new reliable evidence that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 324, 327. New evidence presented in support of a fundamental miscarriage of justice claim may include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Id.* at 324, *see also,*

- 14 -

*House v. Bell,* 547 U.S. 518 (2006) (stating that a fundamental miscarriage of justice contention must involve evidence that the trial jury did not have before it).

Petitioner has not offered any new evidence, or asserted that, in light of any newly discovered evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 324, 327.

Because Petitioner has not established any basis to excuse his procedural default, Petitioner's claims asserted in Ground One and Two, and his second and third claims of ineffective assistance of counsel asserted in Ground Three are barred from federal habeas corpus review.

## III. Merits Review

As previously stated, Petitioner's claim, asserted in Ground Three, that counsel was ineffective for failing to prepare and investigate Petitioner's defense of "multiplicty" was properly presented to the state courts. The Court, therefore, will consider the merits of that claim.

### A. Standard of Review

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA") which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Under the AEDPA, a federal court may not grant a habeas petition "with respect to any claim that was adjudicated on the merits in state court" unless the state court's decision was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2); *Carey v. Musladin*, 549 U.S. 70 (2006); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir. 2006). To determine whether a state court ruling was "contrary to" or involved an "unreasonable

application" of federal law, courts look exclusively to the holdings of the Supreme Court which existed at the time of the state court's decision. *Mitchell v. Esparza*, 540 U.S 12, 14-15 (2003); *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Accordingly, the Ninth Circuit has acknowledged that it cannot reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal constitutional issue. *Brewer v. Hall*, 378 F.3d 952, 957 (9th Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Even if the state court neither explained its ruling nor cited United States Supreme Court authority, the reviewing federal court must nevertheless examine Supreme Court precedent to determine whether the state court reasonably applied federal law. *Early v. Packer*, 537 U.S. 3, 8 (2003). The United States Supreme Court has expressly held that citation to federal law is not required and that compliance with the habeas statute "does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.*

A state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell*, 540 U.S at 14 (citations omitted); *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Williams*, 529 U.S. at 405; *Brown v. Payton*, 544 U.S. 133, 141 (2005). An incorrect application of federal law does not satisfy this standard. *Yarborough v. Alvarado*, 541 U.S. 652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable."). "It is not enough that a federal habeas court, in its independent review of the legal question," is left with the "firm conviction" that the state court ruling was "erroneous." *Id.*; *Andrade*, 538 U.S. at 75. Rather, the petitioner must establish that the state court decision is "objectively unreasonable." *Middleton v. McNeil*, 541 U.S. 433 (2004); *Andrade*, 538 U.S. at 76.

1  //

2  ///

### B. Ineffective Assistance of Counsel

3

4  In Ground Three, Petitioner asserts that trial counsel was ineffective for failing to

5  challenge the charges as multiplicious. (docket # 1 at 8)  Petitioner raised this same claim

6  on post-conviction review and the court found that Petitioner's ineffective assistance of

7  counsel claim lacked merit. (Respondents' Exh. P)  As discussed below, Petitioner has not

8  shown that the state court's decision was contrary to, or an unreasonable application of,

9  clearly established federal law.

10  The controlling Supreme Court precedent on claims of ineffective assistance of

11  counsel is *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner

12  must show that counsel's performance was objectively deficient and that counsel's deficient

13  performance prejudiced the petitioner.  *Strickland*, 466 U.S. at 687; *Hart v. Gomez*, 174 F.3d

14  1067, 1069 (9th Cir. 1999).  To be deficient, counsel's performance must fall "outside the

15  wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690. When

16  reviewing counsel's performance, the court engages a strong presumption that counsel

17  rendered adequate assistance and exercised reasonable professional judgment.  *Strickland*,

18  466 U.S. at 690.  "A fair assessment of attorney performance requires that every effort be

19  made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

20  counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

21  time."  *Strickland*, 466 U.S. at 689.  Review of counsel's performance is "extremely

22  limited."  *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other*

23  *grounds*, 525 U.S. 141 (1998).  Acts or omissions that "might be considered sound trial

24  strategy" do not constitute ineffective assistance of counsel.  *Strickland*, 466 U.S. at 689.

25  To establish a Sixth Amendment violation, petitioner must also establish that he

26  suffered prejudice as a result of counsel's deficient performance.  *Strickland*, 466 U.S. at

27  691-92; *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006) (stating that "a violation

28  of the Sixth Amendment right to effective representation is not 'complete' until the

defendant is prejudiced.")  To show prejudice, petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694; *Hart*, 174 F.3d at 1069; *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998).  The court may proceed directly to the prejudice prong.  *Jackson v. Calderon*, 211 F.3d 1148, 1155 n. 3 (9th Cir. 2000) (citing *Strickland*, 466 U.S. at 697).  The court, however, may not assume prejudice solely from counsel's allegedly deficient performance.  *Jackson*, 211 F.3d at 1155.

In this case, Petitioner argues that trial counsel was ineffective for failing to challenge the indictment as multiplicitous.  On post-conviction review, the trial court rejected this claim.  The court found that the indictment charging Petitioner with aggravated robbery and theft was not multiplicitous because the "offenses as charged constitute separate and distinct offenses. . . ."  (Respondents' Exh. P at 2)  The Court further stated that:

> counsel wasn't ineffective for failing to raise at the trial level claims that were not legally tenable.  Had counsel moved to dismiss any of the counts for being multiplicitous or for exposing the Defendant to a claim of double jeopardy, the Motion would have been denied.  Counsel presumably was aware of the law in this regard and for that reason chose not to raise these issues.  Therefore, counsel's performance cannot be deemed to have fallen below any objective standard of reasonableness, and there is no chance that the outcome of the trial would have been different had counsel raised these issues.

(Respondents' Exh. P at 2)  Petitioner has not shown that the trial court's ruling was based on an unreasonable determination of the facts or on an unreasonable application of *Strickland* to this case.  *See Cone*, 535 U.S. at 702.

"An indictment is multiplicitous when it charges multiple counts for a single offense, producing two penalties for one crime and thus raising double jeopardy questions."  *United States v. Stewart*, 420 F.3d 1007, 1012 (9th Cir.2005); *see also State v. Powers*, 200 Ariz. 123, 125, 23 P.3d 668, 670 (Ariz.Ct.App. 2001) (same).  The Court determines multiplicity by using the test enunciated in *Blockburger v. United States*, 284 U.S. 299, 304  (1932). *Id.*  Under *Blockburger*, the Court examines the elements of the crimes, and determines whether each offense "requires proof of an additional fact which the other does not." *See State v.*

*Eagle*, 196 Ariz. 188, 190, 994 P.2d 395, 397 (2000) (quoting *Blockburger*, 284 U.S. at 304). In other words, an indictment is not multiplicitous if each count requires proof of a fact which the others do not. *Blockburger*, 284 U.S. at 304; *United States v. Roberts*, 783 F.2d 767, 769 (9th Cir.1985). A single act may cause more than a single consequence. *United States v. Shaw*, 701 F.2d 367, 396 (5th Cir.1983). Therefore, a defendant may be convicted of two separate offenses arising from a single act so long as each requires proof of a fact not essential to the other. *Id*.

In determining whether a count requires proof of a fact which the others do not, "[t]he elements of the offense are determinative, even if there is substantial overlap in their proof." *United States v. Solomon*, 753 F.2d 1522, 1527 (9th Cir.1985).

Here, Petitioner was charged with one count of aggravated robbery and two counts of theft of a credit card by fraudulent means. (Respondents' Exh. E) Although, as Petitioner argues in his Reply, under Arizona law, theft is a lesser-included offense of *robbery* for the same crime against the same victim, *State v. Yarbrough*, 131 Ariz. 70, 73, 638 P.2d 737, 740 (Ariz.Ct.App.1981), Petitioner was charged and convicted of *aggravated* robbery and theft of a credit card.

Under the statutes applicable at the time of Petitioner's conviction, a person commits robbery if:

> In the course of taking any property of another from his person . . . against his will, such person threatens or uses force against any person with intent either to coerce surrender or property or to prevent resistance to such person taking or retaining property.

A.R.S. § 13-1902(A) (2004). Robbery may be classified as aggravated robbery "if in the course of committing robbery . . . such person is aided by one or more accomplices actually present." A.R.S. § 13-1903(A) (2004).

Theft of a credit card required proof that Petitioner controlled a credit card without the consent of the cardholder or issuer through theft, as theft is defined in A.R.S. § 13-1802. *See* A.R.S. § § 13-2102 (2004). Arizona Revised Statute § 13-1802 (2004) provides, in relevant part, that:

- 19 -

> A person commits theft if, without lawful authority, the person knowingly:
>
> 1. Controls property of another with the intent to deprive the other person of such property . . . .

*Id.*

> Arizona Revised Statute § 13-2102 (2004) provides, in relevant part, that:
>
> > A. A person commits *theft of a credit card* or obtaining a credit card by fraudulent means if the person:
> >
> > 1. Controls a credit card without the cardholder's or issuer's consent through conduct prescribed in section 13-1802 or 13-1804 . . . .

*Id.* (emphasis added)

Under Arizona law, to obtain a conviction of Petitioner for aggravated robbery, the State was required to prove that an accomplice aided Petitioner - a fact that was not necessary to prove either of the theft charges alleged in Counts 2 and 3 on the indictment. Count 2 required the State to prove that Petitioner, without the consent of Earl P. and/or *Sears*, knowingly controlled the credit card of Earl P., a fact not essential to the other two counts. *Id.* Similarly, Count 3 required the State to prove that Petitioner, without the consent of Earl P. and/or *Bank One*, knowingly controlled the credit card of Earl P, also a fact not essential to the other two counts. *Id.* There was "a specific and separate credit card in each count. There was then specific intent to defraud twice, once as to each card and bank. Charging under two counts was not, therefore, multiplicitous." *State v. Via*, 146 Ariz. 108, 116, 704 P.2d 238, 246 (Ariz. 1985).

The facts upon which the charges of aggravated robbery and theft of a Bank One credit card, and theft of a Sears credit card were based included Petitioner, with the help of one or more accomplices, using threats or force to take a wallet which contained two credit cards and other items from the victim. (Respondents' Exhs. A at 18-19; C at 14; Exh. E) Although there was some overlap in the proof between these three counts, each count required proof of a fact not required by the others. *Via*, 146 Ariz. 108, 116, 704 P.2d 238, 246 (stating that "[i]n determining whether charges for the same offense are multiplicitous, the inquiry is whether the conduct underlying the multiple charges involves separate and distinct acts or courses of conduct.") Accordingly, the indictment was not multiplicitous and

there was no basis for objecting to the indictment on that ground. *See State v. Harrison*, 2009 WL 2674559 (Az.Ct. App., August 27, 2009) (affirming convictions for aggravated robbery and theft of a credit card).

Counsel is not expected to file groundless motions. *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) (stating that "[a] lawyer's zeal on behalf of his client does not require him to file a motion which he knows to be meritless on the facts and the law.") Thus, counsel's failure to challenge the indictment as multiplicitous was not deficient performance. *Strickland*, 466 U.S. at 689. Additionally, Petitioner has not shown that counsel's performance resulted in prejudice. Because the indictment was not multiplictious, a motion to dismiss the indictment on that basis lacked merit. Thus, Petitioner cannot show there is a reasonable probability that, but for counsel's failure to challenge the indictment as multiplicitous, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Accordingly, Petitioner's claim of ineffective assistance of counsel fails.

**IV. Conclusion**

Based on the foregoing, the Petition should be denied and dismissed because Petitioner's claims are either procedurally barred from federal habeas corpus review or lack merit.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (docket # 1) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The

parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have seven days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 24th day of May, 2010.

Lawrence O. Anderson
United States Magistrate Judge